UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KATHLEEN CZAJA,

          Plaintiff,

    v.                                      20-CV-1721-LJV
                                            DECISION & ORDER

DELTA AIRLINES,

          Defendant.
_____

On November 25, 2020, the plaintiff, Kathleen Czaja, commenced this action under the Americans with Disabilities Act of 1990 ("ADA") and the New York State Human Rights Law. Docket Item 1. Czaja alleges that Delta Airlines ("Delta") discriminated against her on the basis of her disability when it refused to provide an accommodation for injuries that Czaja sustained while working as a flight attendant in 2015. *See id.*

On February 8, 2021, Delta moved to dismiss Czaja's claims as untimely and inadequately pleaded. Docket Item 9. On March 18, 2021, Czaja responded, Docket Item 13, and on March 25, 2021, Delta replied, Docket Item 14.[1] For the following reasons, Delta's motion to dismiss is granted in part, and the remainder of the motion will be granted unless Czaja amends her complaint to correct the deficiencies noted below.

---

[1] Czaja filed her response almost a month after it was due, *see* L. R. Civ. P. 7(b)(2)(B), without moving for an extension of time or otherwise accounting for her untimely filing. Although this Court can and does accept Czaja's late response, Czaja is warned that further failure to comply with motion deadlines may result in this Court's deciding any future motions on the defendant's papers alone.

**FACTUAL BACKGROUND**

Czaja started working as a Delta flight attendant in April 2014.[2]  Docket Item 1 at ¶ 11.  On March 25, 2015, she was injured when the aircraft on which she was working encountered turbulence and she "los[t] her balance because of the high-heeled shoes Delta's uniform policy required her to wear."  *Id.* at ¶ 12.

That same day, Czaja reported her injury to Delta's claims manager, Sedgwick Claims Management Services, Inc. ("Sedgwick").  *Id.* at ¶ 14.  The next day, Czaja "informed Delta managers at the Atlanta airport about her injury and asked about taking a leave of absence to get medical treatment."  *Id.*  Czaja "was informed that she could take a taxi to a nearby urgent care facility and pay for treatment herself," and she was warned that if she "missed a flight[,] that would count as a 'strike' on her personnel record."  *Id.*  Czaja continued to work for several weeks even though her injury made "walking and standing for long periods very difficult."  *Id.* at ¶¶ 13, 15.  She began disability leave on April 15, 2015.  *Id.* at ¶ 16.

In July 2015, Czaja asked Sedgwick whether she could resume working as a flight attendant with the accommodation of wearing black sneakers or black laced shoes rather than high-heels.  *Id.* at ¶ 17.  Both requests were denied.  *Id.*  Czaja also asked about transferring to a new position, but Sedgwick told her that reassignment was not its

---

[2] The following facts are taken from the complaint and are presumed true for the purposes of this decision.  *See Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016) (in reviewing a motion to dismiss under Rule 12(b)(6), a court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff").

"area" and that "switching positions was not an option." *Id.* at ¶ 18. Sedgwick did not tell Czaja that she "could contact Delta about accommodations or switching jobs." *Id.*

At some point between "approximately the summer [of] 2015 through the summer of 2016," Czaja "applied for a marketing position with Delta." *Id.* at ¶ 21. She "believed that she was qualified for the position" because she had a bachelor's degree in business administration, but she never was given an interview. *Id.* Czaja then emailed Delta's Chief Executive Officer in August 2016 to recount her "struggles to obtain an accommodation" and ask "whether there was [a] possibility of transferring to a different position." *Id.* at ¶ 22. Czaja's email was forwarded to Delta's base manager for its Atlanta hub, who informed Czaja that "she could apply to other jobs through Delta's online job portal." *Id.* at ¶¶ 22-23.

In October 2016, Czaja "provided Delta with a doctor's note stating that [she] could return to work as a flight attendant with flat shoes." *Id.* at ¶ 24. Delta replied "that only loafers with a half-inch heel would suffice under its uniform policy" and again rejected Czaja's request for an exception to the footwear policy. *Id.*

At Sedgwick's request, Czaja underwent two independent medical examinations in 2017. *Id.* at ¶¶ 25-26. In the second examination, "the examining doctor" confirmed that Czaja "was physically unable to return to work as a flight attendant[] even with an exception to the uniform policy's shoe requirements." *Id.* at ¶¶ 26-27. In January 2018, Delta sent Czaja a letter "stating [that] it had been notified by Sedgwick that [Czaja] had a disability that prevented her from working as a flight attendant." *Id.* at ¶ 28. The letter also provided information about accommodation requests, including guidelines for Delta's Job Accommodation Program. *Id.* That program "provides alternative position

assistance to employees with medical impairments that prevent them from returning to their previous positions" and "commits to helping employees . . . identify and secure another position at Delta."  *Id.*

Czaja applied for an accommodation on February 5, 2018.  *Id.* at ¶ 30.  In April 2018, she spoke with a Delta Accommodations employee to "ask[] what she needed to do to move forward with [her] accommodation request."  *Id.* at ¶ 31.  The Delta Accommodations employee told Czaja that "she needed to print the Delta uniform guide . . . and have her doctors cross off all the shoes that [she] could not wear."  *Id.*  In response, Czaja submitted a doctor's note that "recommended against [] Czaja returning as a flight attendant."  *Id.* at ¶ 32.

On July 19, 2018, Delta informed Czaja that it was closing her request for an accommodation.  *Id.* at ¶ 33.  The next week, she emailed Delta Accommodations "requesting confirmation as to whether Delta could help her find a new position."  *Id.*  Czaja then spoke with a Delta Accommodations employee, who "told [her] that she could only get an accommodation that was approved within the uniform guidelines."  *Id.* at ¶ 34.  Czaja did not receive any information about a new position on that call.  *Id.*  She again emailed Delta Accommodations in August 2018 to ask about the "next step in the accommodations process," but Delta did not respond.  *Id.* at ¶ 35.

In October 2018, Czaja wrote to Delta's Human Resources department about Delta's "employee policies/handbook regarding injured employees" and spoke with Delta Accommodations.  *Id.* at ¶¶ 36-38.  She also requested documents from her personnel file.  *Id.* at ¶¶ 36-37.  Delta did not provide those materials.  *Id.* at ¶¶ 36-38.

Czaja filed a charge of discrimination with the United States Equal Employment Opportunity Commission on May 30, 2019. *Id.* at ¶ 7. She received a right to sue letter on August 27, 2020, and subsequently filed suit in this Court. *Id.* at ¶ 8.

## LEGAL PRINCIPLES

To survive a motion to dismiss, a complaint must include sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Conn. Gen. Life Ins. Co. v. BioHealth Labs., Inc.*, 988 F.3d 127, 131-32 (2d Cir. 2021) (quoting *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015)).

## DISCUSSION

I. **ADA CLAIM**

"An employer may [] violate the ADA by failing to provide a reasonable accommodation." *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013). To "state[] a *prima facie* failure to accommodate claim," a plaintiff must show that:

> (1) [she] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, [she] could perform the essential functions of

5

the job at issue; and (4) the employer has refused to make such accommodations.

*Id.* at 125-26 (quoting *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009). For a claim that an employer failed to provide a reasonable accommodation through a transfer of position, "the employee bears the burden of showing . . . the existence of a vacant position for which she is qualified." *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 F. App'x 123, 126 (2d Cir. 2019) (summary order).

Czaja claims that Delta violated the ADA in two ways: by failing to accommodate her request for a "simple exception to [its] uniform policy" and by "refus[ing] to [] discuss . . . the possibility of finding another position at Delta." Docket Item 1 at ¶¶ 42-43, 47-53. Delta argues that any ADA claim founded on the first alleged violation is time barred and that any based on the second fails to state a claim for relief.[3] This Court agrees.

### A.   Timeliness

"A plaintiff seeking to assert an ADA discrimination claim must first file an administrative charge with the EEOC or an equivalent agency within three hundred days after the alleged unlawful employment practice." *Zabar v. N.Y.C. Dep't of Educ.*, 2020

---

[3] In reply, Delta also argues that any ADA claim arising out of Czaja's inability to transfer to an alternative position likewise is time barred. *See* Docket Item 14 at 8-11. Although Delta alluded to this in its opening brief, *see* Docket Item 10 at 10, it primarily contended that Czaja failed to state an ADA claim for this alleged violation, *see id.* at 10-13. Because this Court agrees with Delta on the latter point, and because any repleading based on this decision may alter the timeliness analysis, this Court does not reach the former issue now. If Czaja files an amended complaint, any issues of timeliness may be addressed then.

6

WL 2423450, at *4 (S.D.N.Y. May 12, 2020) (citation and internal quotation marks omitted).  "Failure to do so renders the claim time[ ]barred."  *Id.* (citation omitted).  So courts "do not have jurisdiction over claims of discrimination which occurred more than 300 days prior to the date on which an administrative charge of discrimination was filed."  *Baker v. CSX Transp., Inc.*, 546 F. Supp. 2d 90, 96 (W.D.N.Y. 2008).  Because Czaja filed her charge of discrimination with the EEOC on May 30, 2019, any ADA claim arising out of discrete acts of discrimination that took place before August 3, 2018, is time barred.[4]

Czaja alleges that she first sought an accommodation to Delta's shoe policy in July 2015.  Docket Item 1 at ¶ 17.  Her accommodation request was rejected that same month when Sedgwick denied Czaja's request to wear either black sneakers or black laced shoes.  *See id.*  Delta rejected Czaja's renewed request for an accommodation to the footwear policy in October 2016.  *See id.* at ¶ 24.  By April 2018, Czaja apparently had abandoned her request for an exception to the footwear policy:  When Czaja was asked to "print off the Delta uniform guide . . . and have her doctors cross off all the shoes [she] could not wear," she responded with a doctor's note recommending she not

---

[4] The rejection of a proposed accommodation is a "discrete act" for purposes of calculating the limitations period.  A claim challenging the rejection of a proposed accommodation therefore is not timely made simply because the effects of the rejection continued to be felt in the relevant time period.  *See Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134-35 (2d Cir. 2003) ("[A]n employer's rejection of an employee's proposed accommodation . . . does not give rise to a continuing violation.  Rather, the rejection is the sort of 'discrete act' that must be the subject of a complaint to the EEOC within 300 days.").  So Czaja's claim challenging Delta's failure to provide an exception to its footwear policy is not the sort of "continuing violation" that could save an otherwise untimely claim.  *See id.*

return to work as a flight attendant.  See id. at ¶¶ 31-32.  Czaja does not allege that she renewed her request for a footwear accommodation at any time after August 3, 2018.[5]

In other words, Czaja's complaint alleges that all her requests for an exception to Delta's footwear policy were made and rejected before August 3, 2018.[6]  Accordingly, any ADA claim resting on Czaja's request for an exception to Delta's footwear policy during this period is time barred.[7]  See Baker, 546 F. Supp. 2d at 96.

### B.     Failure to State a Claim

Czaja also alleges that Delta failed to provide a reasonable accommodation when it "refused to even discuss with her the possibility of finding another position at Delta."  Docket Item 1 at ¶ 42.  Czaja contends that this claim is timely because she was "engaged in ongoing discussions" about a transfer until "October 2018."  Docket Item 13 at 7.

---

[5] Indeed, Czaja effectively concedes the point in her response to the motion to dismiss.  See Docket Item 13 at 7 (arguing that her claims are timely because she was "engaged in ongoing discussions regarding . . . [a] transfer[] to [another] position," not because her claim based on requests for a footwear accommodation was timely).

[6] Because each of Czaja's requests for an exception to the footwear policy was made before August 3, 2018, this Court need not address whether her repeated requests for that accommodation had any effect on the limitations period—an issue that seems to be somewhat more unsettled than Delta claims.  Compare Castiblanco v. Am. Airlines, Inc., 2019 WL 4751880, at *9 (E.D.N.Y. Sept. 29, 2019) (collecting cases) (noting that it "is not yet settled whether a new limitations clock begins to run each time that a request for accommodations is made anew and denied again"), with Ross v. New York, 2017 WL 354178, at *2 (S.D.N.Y. Jan. 24, 2017) (rejecting notion that "repeated requests for the same accommodation or requests for reconsideration of a denial of an accommodation . . . restart the clock under the ADA").

[7] Czaja also has not alleged any facts suggesting that her case presents any "rare and exceptional circumstances" warranting equitable tolling.  See Zerilli-Edelglass v. N.Y.C. Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003) (citation omitted).

As Czaja acknowledges, a plaintiff asserting a reasonable accommodation claim premised on her employer's failure to reassign her to another position must show "the existence of a vacant position for which she is qualified."  Docket Item 13 at 7 (quoting *McBride*, 583 F.3d at 97).  "An employee is qualified for a position only if she can perform its essential functions."  *McBride*, 583 at 98.  So if a plaintiff fails to allege the existence of such a position, her claims are subject to dismissal.  *See Harvin*, 767 F. App'x at 126 (upholding dismissal of failure to accommodate claim where the plaintiff "did not allege that there was an open position . . . when she asked to transfer").

Czaja's complaint identifies one position with Delta for which she applied over the course of four years:  a marketing position.  Docket Item 1 at ¶ 21.  Czaja alleges that she was qualified for that marketing position because she "had received a bachelor's degree in business administration."  *Id.*  But Czaja applied for that position sometime between "the summer [of] 2015 through the summer of 2016"—in other words, well before the August 3, 2018 cutoff for her ADA claim.  *Id.*  So any ADA claim arising out of that application appears to be time barred for the reasons set forth above.  *See Harvin*, 767 F. App'x at 126 n.2 (declining to consider transfer request denied more than three hundred days before the plaintiff filed her administrative charge); *see also McBride*, 583 F.3d at 97-98 (vacant position must exist "at or around the time when accommodation was sought").

Beyond that marketing position, Czaja has not alleged that Delta had any vacant position for which she was qualified.  Nor does she allege that the marketing position remained vacant, and that her application remained open and under consideration, after August 3, 2018.  Instead, she generally asserts that in October 2018, Delta failed to

9

advise her about "how Delta might help her find another position." Docket Item 1 at ¶ 38.

As noted above, however, to state a viable claim Czaja must allege the "existence . . . of an existing vacant position to which she could have been reassigned." *McBride*, 583 F.3d at 97-98. It is not enough to "merely [] recit[e] the formula that her employer could have reassigned her." *Id.* at 97. Because Czaja's complaint does not allege that she was qualified for any vacant position during the relevant limitations period, she has not stated an ADA claim based on Delta's failure to transfer her.

## II.    NEW YORK STATE HUMAN RIGHTS LAW CLAIM

Czaja's lone remaining claim is under the New York State Human Rights Law. *See* Docket Item 1 at ¶¶ 54-60. Although Delta argues that this claim is likewise untimely and insufficiently pleaded, *see* Docket Item 10, this Court need not cut through that thicket now.

The only jurisdictional basis that Czaja offers for her state law claim is supplemental jurisdiction under 28 U.S.C. § 1367. *See* Docket Item 1 at ¶ 4. A "district court[] may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity[]' in deciding whether to exercise jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 450 (1988)). And "in the usual case in which all federal[ ]law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over

the remaining state[ ]law claims." *Id.* (alterations omitted) (quoting *Cohill*, 484 U.S. at 350 n.7).

For the reasons stated above, this Court concludes that Czaja has failed to state a viable ADA claim. Because Czaja's only federal claim therefore is subject to dismissal, this Court declines to exercise supplemental jurisdiction over Czaja's state law claim. Accordingly, Czaja's New York State Human Rights Law claim likewise will be dismissed if she does not file an amended complaint correcting the above deficiencies.

### III.   LEAVE TO AMEND

Czaja does not request leave to amend her complaint. *See* Docket Item 13. Nevertheless, because leave to amend should be "freely given" whenever a complaint is dismissed, *see McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), within 60 days Czaja may file an amended complaint that corrects the deficiencies noted above. Leave to amend any ADA claim based on discrete acts of discrimination that occurred before August 3, 2018, is denied, however, because such a claim would be time barred. *See Cuoco v. Mortisugu*, 222 F.3d 99, 112 (2d Cir. 2000) (leave to amend may be denied when any amendment would be "futile").

## **CONCLUSION**

For all the reasons stated above, Delta's motion to dismiss is GRANTED in part. Czaja's ADA claim based on discrete acts of discrimination that occurred prior to August 3, 2018, is dismissed. The remainder of Delta's motion to dismiss will be granted unless Czaja amends her complaint to correct the deficiencies noted above within 60 days. Delta may answer, move against, or otherwise respond to any amended complaint within 30 days of its filing. If Czaja does not file an amended complaint within 60 days, then her complaint will be dismissed, and the Clerk of the Court shall close this case without further order.

SO ORDERED.

Dated:   February 10, 2022
         Buffalo, New York

                                                       **_/s/ Lawrence J. Vilardo_**
                                                       LAWRENCE J. VILARDO
                                                       UNITED STATES DISTRICT JUDGE