UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KATHLEEN CZAJA,

        Plaintiff,

    v.                                  20-CV-1721-LJV
                                        DECISION & ORDER

DELTA AIRLINES,

        Defendant.
_____

On November 25, 2020, the plaintiff, Kathleen Czaja, commenced this action against Delta Airlines ("Delta").  Docket Item 1.  She alleged that Delta discriminated against her on the basis of her disability when it refused to provide an accommodation for injuries that Czaja sustained while working as a flight attendant in 2015.  *See id.*  She brought claims under the Americans with Disabilities Act of 1990 ("ADA") and the New York State Human Rights Law ("NYSHRL").  *See id.*

Delta moved to dismiss the complaint, arguing that Czaja's claims were untimely and inadequately pleaded.  Docket Item 9.  On February 10, 2022, this Court granted Delta's motion in part.  Docket Item 15.  More specifically, this Court found that some of Czaja's allegations were untimely and that her ADA claim was subject to dismissal, but it gave her leave to amend that claim.  *See id.*  The Court declined to exercise supplemental jurisdiction over Czaja's remaining state law claim.  *See id.*

Czaja then filed an amended complaint, Docket Item 16, and Delta renewed its motion to dismiss, Docket Item 17.  On May 30, 2022, Czaja responded to the motion to dismiss, Docket Item 21, and Delta replied about three weeks later, Docket Item 22.

For the reasons that follow, Delta's motion to dismiss is granted. Czaja's ADA claim is dismissed, and the Court declines to exercise supplemental jurisdiction over her NYSHRL claim.

### FACTUAL BACKGROUND[1]

Czaja started working as a Delta flight attendant in April 2014. Docket Item 16 at ¶ 11. On March 25, 2015, she was injured when the aircraft on which she was working encountered turbulence and she "los[t] her balance because of the high-heeled shoes Delta's uniform policy required her to wear." *Id.* at ¶ 12. "As a result" of that fall, Czaja "suffered an injury which made walking and standing for long periods very difficult." *Id.* at ¶ 13.

Later that day, Czaja reported her injury to Delta's claims manager, Sedgwick Claims Management Services, Inc. ("Sedgwick"). *Id.* at ¶ 14. The next day, Czaja "informed Delta managers at the Atlanta airport about her injury and asked about taking a leave of absence to get medical treatment." *Id.* Czaja "was informed that she could take a taxi to a nearby urgent care facility and pay for treatment herself," and she was warned that if she "missed a flight, that would count as a 'strike' on her personnel record." *Id.*

---

[1] The following facts are taken from the amended complaint, Docket Item 16. On a motion to dismiss under Rule 12(b)(6), a court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

"Fearing such discipline," Czaja "continued to work for several weeks even though her injury caused her a great deal of pain." *Id.* at ¶ 15. She then took short-term disability leave beginning on April 15, 2015. *Id.* at ¶ 16.

In July 2015, Czaja "had several communications with Sedgwick about her returning" to work as a Delta flight attendant "with [an] accommodation." *Id.* at ¶ 17. More specifically, Czaja asked if she could wear black sneakers or black laced shoes instead of high-heeled shoes. *Id.* Those requests were denied. *Id.* Czaja "also asked Sedgwick about the possibility of transferring to a new position . . . instead of returning as a flight attendant." *Id.* at ¶ 18. Sedgwick told her that reassignment was not in its "area" and that "switching positions was not an option." *Id.* But Sedgwick did not tell Czaja "that she could contact Delta about accommodations or switching jobs." *Id.*

Czaja continued to "tr[y] to find a Delta-approved shoe without heels" that she could wear at work. *Id.* at ¶ 19. "On several different occasions," Czaja "informed Sedgwick representatives that she could not find suitable footwear" from the options that Delta provided. *Id.* "Each time[,] Sedgwick insisted that [] Czaja keep looking for footwear that met Delta's uniform standards." *Id.*

Sometime between "the summer of 2015 [and] the summer of 2016," Czaja "applied for a marketing position with Delta." *Id.* at ¶ 21. She "believed that she was qualified for the position" because she had a bachelor's degree in business administration. *Id.* But she "never got a call for an interview for th[e] position." *Id.*

Around that same time, Czaja's doctor "informed her that she could return to work in a sedentary position only." *Id.* And after another examination, a different doctor

3

"noted that [] Czaja did not appear to be capable of returning" to her job as a flight attendant—at least if she had to wear high-heeled shoes.  *Id.* at ¶ 22.

In August 2016, Czaja emailed Delta's Chief Executive Officer to recount her "struggles to obtain an accommodation and [to] ask[] whether there was [a] possibility of transferring to a different position."  *Id.* at ¶ 23.  Czaja's email was forwarded to Delta's base manager for its Atlanta hub, who informed Czaja that "she could apply to other jobs through Delta's online job portal."  *Id.* at ¶¶ 23-24.

In October 2016, Czaja "began long-term disability" leave.  *Id.* at ¶ 25.  She also "provided Delta with a doctor's note stating that she could return to work as a flight attendant with flat shoes."  *Id.*  But Delta "denied this request" and maintained that "only loafers with a half-inch heel would suffice under its uniform policy."  *Id.*

At Sedgwick's request, Czaja underwent two independent medical examinations in 2017.  *Id.* at ¶¶ 27, 30.  The first examining doctor "recommended that [] Czaja not wear heels again if she wanted to avoid the risk of re-injury."  *Id.* at ¶ 27.  The second examining doctor "confirmed her restriction on wearing any heels and further stated that [she] was unable to perform in-flight and post-flight duties."  *Id.* at ¶ 30.  "This meant [that] Czaja was physically unable to return to work as a flight attendant, even with an exception to the uniform policy's shoe requirements."  *Id.* at ¶ 31.

In January 2018, Delta sent Czaja a letter "stating [that it] had been notified by Sedgwick that [Czaja] had a disability that prevented her from working as a flight attendant but also providing her with information on how to submit an accommodation request."  *Id.* at ¶ 32.  The letter also provided information about accommodation requests, including guidelines for Delta's Job Accommodation Program.  *Id.*  That

4

program "provides alternative position assistance to employees with medical impairments that prevent them from returning to their previous positions" and "commits to helping employees . . . identify and secure another position at Delta."  *Id.*

Czaja applied for an accommodation on February 5, 2018.  *Id.* at ¶ 34.  In April 2018, she spoke with a Delta Accommodations employee to "ask[] what she needed to do to move forward with her accommodation request."  *Id.* at ¶ 35.  The Delta Accommodations employee "told [] Czaja that she needed to print the Delta uniform guide from Delta's website and have her doctors cross off all the shoes [that she] could not wear."  *Id.*  In response, Czaja submitted a doctor's note that "recommended against [] Czaja returning as a flight attendant."  *Id.* at ¶ 37.  Despite making several phone calls to Delta's Employee Service Center and Human Resources department, Czaja did not hear back from Delta Accommodations after she submitted that note.  *Id.*

On July 19, 2018, Delta informed Czaja that it was closing her request for an accommodation.  *Id.* at ¶ 38.  The next week, she emailed Delta Accommodations "requesting confirmation as to whether Delta could help her find a new position."  *Id.*  Czaja then spoke with another Delta Accommodations employee, who "asked what [] Czaja was asking Delta to do, as her last doctor's note made it seem like an accommodation was not an option for her."  *Id.* at ¶ 39.  The Delta Accommodations employee then told Czaja that "she could only get an accommodation that was approved within the uniform guidelines."  *Id.*  Czaja did not receive any information about a new position on that call.  *Id.*  She again emailed Delta Accommodations in August 2018 to ask about the "next step in the accommodations process," but Delta did not respond.  *Id.* at ¶ 40.

5

In October 2018, Czaja wrote to Delta's Human Resources department, "explain[ing] how little Delta had communicated with her over the prior few years and ask[ing]" for "copies of Delta's employee policies/handbook regarding injured employees." *Id.* at ¶¶ 41-42.  Czaja also requested documents from her personnel file. *Id.* at ¶ 42.  Delta did not provide those documents.  *See id.* at ¶ 43.

Later that month, Czaja spoke to a Delta Accommodations employee on the phone.  *Id.*  The employee referred to Czaja's accommodation request, but did not "advise [her] on how Delta might help her find another position." *Id.*

In April 2019, Czaja's lawyers sent Delta a "demand [l]etter."  *Id.* at ¶ 45.  About a month after that, Czaja filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").  *Id.* at ¶ 7.  She received a right to sue letter on August 27, 2020, and subsequently filed suit in this Court.  *Id.* at ¶ 8.

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "[A]lthough 'a court must accept as true all of the allegations contained in a complaint,' that tenet 'is inapplicable to legal conclusions,' and 'threadbare recitals of the elements of a cause of

6

action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (alterations and internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).

## **DISCUSSION**

### I. ADA CLAIM

"An employer may [] violate the ADA by failing to provide a reasonable accommodation." *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013). To "state[] a *prima facie* failure[-]to[-]accommodate claim," a plaintiff must show that:

> (1) [she] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, [she] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*Id.* at 125-26 (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)); *see also Morey v. Windsong Radiology Grp., P.C.*, 794 F. App'x 30, 32 (2d Cir. 2019) (summary order) ("[T]o survive a motion to dismiss, [the plaintiff] need only allege facts to support her *prima facie* case that (1) she is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of her disability; (3) with reasonable accommodation, she could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." (alterations, citation, and internal quotation marks omitted)). "In the context of the ADA, reasonable accommodation may include, *inter alia*, modification of job duties and schedules, alteration of the facilities in which a job is performed, acquisition of devices to assist the performance of job duties, and, under certain circumstances, 'reassignment to a vacant position.'" *McBride*, 583 F.3d at 97 (quoting 42 U.S.C. § 12111(9)).

7

Czaja claims that Delta violated the ADA by failing to accommodate her request for a "simple exception to [its] uniform policy" and by failing to reassign her to another position. *See, e.g.*, Docket Item 16 at ¶¶ 46, 50. She also suggests that Delta should have done more to help her move to another job. *See id.* at ¶ 46. For the reasons that follow, Czaja's failure-to-accommodate claim based on Delta's rejection of her proposed exception to the footwear policy is untimely, and her failure-to-accommodate claim based on Delta's refusal to transfer her is inadequately pleaded.

### A.     Timeliness

"A plaintiff seeking to assert an ADA discrimination claim must first file an administrative charge with the EEOC or an equivalent agency within three hundred days after the alleged unlawful employment practice." *Zabar v. N.Y.C. Dep't of Educ.*, 2020 WL 2423450, at *4 (S.D.N.Y. May 12, 2020) (citation and internal quotation marks omitted). "Failure to do so renders the claim time[ ]barred." *Id.* (citation omitted); *see generally Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) ("As for the permissible temporal scope of a federal claim of employment discrimination, generally if the plaintiff has initially filed an administrative claim in a state whose laws prohibit such discrimination, the limitations period for filing an action is 300 days after the alleged unlawful practice."). Because Czaja filed her charge of discrimination with the EEOC on May 30, 2019, any claim arising out of discrete acts of discrimination that took place before August 3, 2018, is untimely.

In its prior decision, this Court found that Czaja's claim challenging Delta's failure to offer an exception to the footwear policy was time barred because that claim hinged on discrete acts that all occurred before August 3, 2018. *See* Docket Item 15 at 6-8. In

her amended complaint, Czaja again recounts her attempts to request an accommodation to Delta's uniform policy.  She says that in July 2015, Delta rejected her request to wear either black sneakers or black laced shoes instead of black high-heeled shoes.  Docket Item 16 at ¶ 17.  And she says that Delta again rejected her request for an exception to the footwear policy in October 2016.  *See id.* at ¶ 25.  Finally, she says that in July 2018, she received a letter "informing her that Delta was closing her request for an accommodation."  *Id.* at ¶ 38.

An employer's rejection of a proposed accommodation for an employee's disability is a "discrete act that . . . must be challenged within 300 days of the rejection itself."[2]  *Gomez v. N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 302 (S.D.N.Y. 2016).  And Czaja does not allege anything to suggest that she renewed her request for an exception to the footwear policy during the relevant time period.  Because Delta's rejection of Czaja's proposed accommodation to the footwear policy occurred before August 3, 2018, her claim challenging Delta's refusal to grant an exception to its footwear policy is untimely.  For that reason, and for the reasons stated in this Court's

---

[2] In her response to Delta's motion to dismiss, Czaja does not substantively address the timeliness of her failure-to-accommodate claim based on Delta's footwear policy but instead "argues that the issue is whether high[-]heeled shoes was [sic] an essential function of her job."  Docket Item 21 at 2.  She cites case law related to the "continuing violation" doctrine, *see id.*, but it is unclear whether she is arguing that her ADA claim is timely based on that doctrine and, if so, what "continuing violation" might fall within the limitations period when Delta closed the request for accommodation more than 300 days before she filed her charge with the EEOC.  Regardless, "an employer's rejection of an employee's proposed accommodation . . . is a discrete act that does not give rise to a continuing violation."  *Gomez*, 191 F. Supp. 3d at 302 (citation and internal quotation marks omitted); *see also id.* ("[T]he rejection of a proposed accommodation is a single completed action when taken[,] although the effect of the employer's rejection continues to be felt by the employee for as long as [she] remains employed." (alterations omitted) (quoting *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 135 (2d Cir. 2003))).

prior decision, Czaja's failure-to-accommodate claim based on her request for an exception to the footwear policy is dismissed.[3]

### B. Failure to State a Claim

Czaja also alleges that Delta violated the ADA by failing to provide an accommodation through reassignment to a vacant position. *See, e.g.*, Docket Item 16 at ¶ 46 ("As of the filing of her EEOC [c]omplaint, Delta had not helped [] Czaja identify and secure another position for which [she] was qualified and would be able to perform with her work restrictions."). This Court previously found that Czaja had not alleged a viable failure-to-accommodate claim based on Delta's failure to transfer her to another position because she had not "allege[d] that she was qualified for any vacant position during the relevant limitations period." Docket Item 15 at 10. Instead, she had "merely recite[d] the formula that [Delta] could have reassigned her." *Id.* (alterations omitted) (quoting *McBride*, 583 F.3d at 97-98). For largely the same reasons, in her amended complaint Czaja has failed to plead a viable failure-to-accommodate claim based on possible reassignment.

As noted above, a reasonable accommodation under the ADA "may include[] . . . reassignment to a vacant position." 42 U.S.C. § 12111(9). "The ADA provides that reassignment to a *vacant* position is a reasonable accommodation, but it does not

---

[3] To be sure, "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Francis v. City of New York*, 235 F.3d 763, 767 (2d Cir. 2000). But even after this Court found that the complaint provided no basis for equitable tolling, *see* Docket Item 15 at 8 n.7, Czaja does not argue that equitable tolling applies or otherwise allege anything to show that her ADA claim is timely based on waiver or estoppel, *see Francis*, 235 F.3d at 767.

require employers to create entirely new positions." *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 F. App'x 123, 126 (2d Cir. 2019) (summary order) (emphasis in original) (citing *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 187 (2d Cir. 2006)).

The only vacant position that Czaja identifies in her amended complaint is a marketing position that she applied to sometime in 2015 or 2016. *See* Docket Item 16 at ¶ 21. But this Court previously found that Czaja could not allege a viable claim based on that position because she had not alleged that the marketing position remained vacant, and that her application remained open and under consideration, during the 300-day period before Czaja filed her charge of discrimination with the EEOC. *See* Docket Item 15 at 9. Czaja did not amend her complaint to correct those deficiencies or otherwise allege that she could have been transferred to any other vacant position. And for that reason, she has not adequately alleged that Delta violated the ADA by failing to reassign her. *See, e.g.*, *Harvin*, 767 F. App'x at 126 (affirming dismissal under Rule 12(b)(6) where the plaintiff "did not allege that there was an open position . . . when she asked to transfer"); *see also Thomas v. District of Columbia*, 2023 WL 2610512, at *6 (D.D.C. Mar. 23, 2023) (dismissing failure-to-accommodate claim as insufficiently pleaded where the plaintiff "failed to plead a vacant position he sought, and for which he was qualified, at the time he requested reassignment"); *see also McBride*, 583 F.3d at 97-98 ("[The plaintiff] must demonstrate the existence, at or around the time when accommodation was sought, of an existing vacant position to which she could have been reassigned.").

In fact, the crux of Czaja's claim seems to be that Delta violated the ADA by not offering more help in transferring her.  *See* Docket Item 16 at ¶ 49 (alleging that Delta "refused to even discuss the possibility of finding another position").  But that alone does not raise a viable claim.

"[T]he ADA imposes liability for[] . . . discriminatory refusal to undertake a feasible accommodation, not mere refusal to explore possible accommodations where, in the end, no accommodation was possible."  *McBride*, 583 F.3d at 100.  So while "the ADA envisions an interactive process by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated," an employer's "failure to engage in an interactive process does not form the basis of an ADA claim in the absence of evidence that accommodation was possible."  *Id.* at 99-100 (alterations, citation, and internal quotation marks omitted).  In other words, without some allegation that Delta failed to accommodate Czaja's disability by assigning her to a vacant position for which she was qualified, the mere fact that Delta failed to engage in an interactive process is not enough to state a viable claim.  *See, e.g.*, *Sheng v. M&TBank Corp.*, 848 F.3d 78, 87 (2d Cir. 2017) ("[T]here is no valid independent claim under the ADA for failure to engage in an interactive process."); *Thomas*, 2023 WL 2610512, at *7 ("Finally, some of [the plaintiff's] allegations suggest that the [defendant] failed to help him enough in seeking a reassignment. . . . But these process-based allegations cannot make up for [the plaintiff's] failure to allege a vacant position he sought, and for which he was qualified, at the time he requested an accommodation.").

For those reasons, and for the reasons stated in this Court's prior decision, Czaja has failed to allege a viable failure-to-accommodate claim based on Delta's failure to reassign her to a vacant position.

## II.     NYSHRL CLAIM

For the reasons stated above, Czaja's ADA claim is not viable.  Her lone remaining claim therefore is under the NYSHRL.  *See* Docket Item 16 at ¶¶ 61-67.  Delta argues that this claim also should be dismissed as untimely and inadequate pleaded.  *See* Docket Item 18 at 9-11.  This Court disagrees.

In its prior decision, this Court declined to exercise supplemental jurisdiction over Czaja's NYSHRL claim because Czaja's federal claim was subject to dismissal at an early stage of the case and Czaja claimed that this Court had only supplemental jurisdiction over her NYSHRL claim.  *See* Docket Item 15 at 10-11.  In her amended complaint, Czaja again alleges that this Court has only supplemental jurisdiction over her NYSHRL claim under 28 U.S.C. § 1367.  *See* Docket Item 16 at ¶ 4.  And for the same reasons that this Court stated in its prior decision, the Court declines to exercise supplemental jurisdiction over that claim.[4]

---

[4] Delta asks this Court to dismiss Czaja's NYSHRL claim on the merits and suggests that this Court "appear[s] to have diversity jurisdiction [over Czaja's] state claim[]" because Czaja alleges that she is a resident of New York and that Delta is a citizen of Delaware and Georgia.  *See* Docket Item 18 at 11 n.6.  But Czaja does not claim that this Court has diversity jurisdiction over her NYSHRL claim; instead, as mentioned above, she invokes only the Court's supplemental jurisdiction.  *See* Docket Item 16 at ¶ 4 (alleging that "[t]he Court has . . . supplemental jurisdiction over [Czaja's] pendant state law claim[ under] 28 U.S.C. § 1367").  And neither Czaja nor Delta say that Czaja's NYSHRL claim would satisfy the other requirement for jurisdiction under 28 U.S.C. § 1332—namely, that "the matter in controversy exceeds the sum or value of $75,000."  28 U.S.C. § 1332(a); *see also, e.g.*, *Pucci v. Brown*, 423 F. App'x 77, 77-78 (2d Cir. 2011) (summary order) (affirming dismissal of complaint "because, although [the plaintiff] and the defendant are alleged to be diverse in citizenship, [the plaintiff]

13

A "district court[] may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity[]' in deciding whether to exercise jurisdiction."  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 450 (1988)).  And "in the usual case in which all federal[ ]law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state[ ]law claims."  *Id.* (alterations omitted) (quoting *Cohill*, 484 U.S. at 350 n.7).

Czaja's federal claim has been dismissed at the earliest stages of this case, and this Court has not passed on the merits or the timeliness of Czaja's NYSHRL claim.  What is more, Czaja's NYSHRL claim is not subject to the same timeliness analysis as her ADA claim.  *See, e.g.*, *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007).  So comity and judicial economy favor declining to exercise supplemental jurisdiction here, and there is no reason to believe that the remaining considerations—fairness and convenience—might suggest otherwise.

## **CONCLUSION**

For the reasons stated above, Delta's motion to dismiss, Docket Item 17, is GRANTED.  Czaja's ADA claim is dismissed, and the Court declines to exercise

---

failed to plead any amount in controversy, let alone an amount in excess of $75,000").  For those reasons, and for the reasons stated in this decision, this Court declines to exercise supplemental jurisdiction over Czaja's NYSHRL claim.

14

supplemental jurisdiction over her NYSHRL claim.  The Clerk of the Court shall close the case.

SO ORDERED.

Dated:   August 21, 2023
         Buffalo, New York

                                        /s/ Lawrence J. Vilardo
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE